No. 45,674

JANICE MATHES, *Appellant,* v. WILLIE PHAY ROBINSON, a/k/a
MRS. JOHN ROBINSON, *Appellee.*

(469 P. 2d 259)

Opinion filed May 9, 1970.

*Edgar W. Dwire,* of Malone, Dwire & Levy, of Wichita, argued the cause, and *Jerry K. Levy* and *E. L. Malone,* of the same firm, were with him on the brief for appellant.

*William R. Smith,* of Hershberger, Patterson, Jones & Thompson, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action to recover damages for the wrong-ful death of the plaintiff's mother, Mrs. Harriet Phillips. (K. S. A. 60-1901.) As the appeal is presented, the sole question for our determination is whether the plaintiff's evidence was sufficient to warrant submission of the case to the jury on the theory the de-fendant was guilty of such reckless conduct as to evince disregard

or indifference to consequences, under circumstances involving danger to life or safety of others, although no harm was intended, which may be justly characterized as willful or wanton conduct.

The district court having sustained the defendant's motion for a directed verdict at the close of the plaintiff's testimony, it is elementary that every material fact which the plaintiff's evidence tended to prove must be taken as true, giving it the most favorable inferences, and disregarding that unfavorable. (*Weber v. Wilson,* 187 Kan. 214, 216, 356 P. 2d 659.) If there is any evidence in the record fairly tending to show such a gross want of care as indicates a willful disregard of consequences, or an indifference of whether such want of care inflicts injury, then it is a question to be determined by the jury whether the negligent conduct of the defendant amounted to willfulness or wantonness. In *Springfield Tent & Awning Co. v. Rice,* 202 Kan. 234, 447 P. 2d 833, it was said:

". . . the rule is that on a motion for directed verdict the trial court does not weigh evidence but must accept as true all the facts which the evidence tends to prove and draw against the party making the motion all reasonable inferences most favorable to the party opposing the motion, and if the evidence is of such character that reasonable men in an impartial exercise of their judgment may reach different conclusions, then the case should be submitted to the jury . . ." (l. c. 237.)

The essential facts shown by the evidence are that in 1957 the defendant inherited from her husband a rooming house located at 535 Cleveland, in Wichita. The rooming house contained several rooms in which unvented gas radiant heaters were installed. The defendant continued to operate the property until 1962. After 1962, she rented the property first to a Mr. West, then to a Mr. Magill, and finally to a Mr. Ward.

When Magill lived in the house, he rented rooms to other persons with the knowledge of the defendant. The defendant lived around the corner from the property and had keys to the house and rooms and came in and went out as she pleased. When Magill moved into the house it was in a run-down and poor condition. He discussed with the defendant what repairs needed to be made to make the old house livable. She made a few repairs, but would not spend any money to fix up the house or vent the gas heaters. Finally, Magill got disgusted and moved out "because the house was just going downhill." He testified it was beyond repair, and had he fixed it himself, it would have cost him more than he could have made out of it.

Ward moved into the house in 1966, and rented a room from Magill. When Magill moved out, he rented the property from defendant. She knew Ward intended to rent some of the rooms to other persons. She also knew there were gas heaters in the rooms and that they were unvented. On one occasion, when the defendant was in the house she and Ward had a conversation about the heaters. He told her they were "bad" and needed to be vented. He testified, "Mrs. Robinson told me—concerning the heaters and everything else, that she wasn't going to fix the house up in no kind of way." He further testified that she "wasn't concerned enough about the house to have the open-faced unvented gas heaters removed."

The defendant testified for the plaintiff that she knew there were unvented gas heaters in the rooms of the house and that they were installed just like they were when the house was left to her by her deceased husband. After the incident of January 1, 1968, hereafter related, she had all the heaters removed upon the order of the Chief of the Wichita Fire Department.

Ward collected the rent from the other tenants and paid his rent and theirs to the defendant at her house. He had sublet one of the rooms to a Timothy Moore. The room contained an open-faced radiant type gas heater which was located on the south wall and installed in a recess in a fireplace. The heater had a capped three-inch vent flange on the back, but no vent or outlet pipe to take carbon monoxide "to the outer air." As installed, the operation of the heater created a hazard to life or safety of persons on the property. Ward told Moore of the dangerous condition of the heater, but the plaintiff's mother had not been advised of the condition.

Moore and the plaintiff's mother arrived at the house at about 5:00 o'clock on the afternoon of December 31, 1967. They had a portable television with them. During the evening Ward saw Mrs. Phillips in his kitchen twice where she ate some roast beef. This was the last time he saw her alive. When Ward returned from his girl friend's house at about 12:15 a. m. January 1, 1968, he heard what he thought was a radio or television playing in Moore's room. He got up early the next morning and thought he heard snoring from the room.

When Mrs. Phillips did not return home by 11:00 a. m., January 1, 1968, the plaintiff went to the rooming house. Ward broke down

the door to Moore's room and found the plaintiff's mother and Moore on the bed. The plaintiff's mother was not breathing, and Moore would not wake up. He died the following afternoon. When Ward and the plaintiff entered the room the heater was burning, the two windows were closed, but there was no odor of gas. The parties stipulated the plaintiff's mother died from carbon monoxide poisoning. There was evidence the room contained a lethal amount of carbon monoxide produced by the burning of the unvented gas heater.

In stating the issues for trial, the pretrial order identifies two separate theories upon which the plaintiff's claim was based. The first was negligence, in the event the decedent, Mrs. Phillips, was an invitee on the premises of the defendant, and the second was willful or wanton conduct in the event the decedent was a licensee.

We consider the case only on the basis as the parties present the appeal, that is, on the theory that Mrs. Phillips was a licensee in relation to the defendant, and that the only duty the defendant, as the owner of the property, owed the decedent was to refrain from willfully or wantonly injuring her.

What degree of negligence the law considers equivalent to a willful or wanton act is as hard to define as negligence itself, and, in the nature of things, is so dependent upon the particular circumstances of each case as not to be susceptible of general statement. Conduct which will justify the presumption of willfulness or wantonness is such as to imply a disregard of consequences or a willingness to inflict injury.

It is fundamental that the law is regardful of human life and personal safety, and if one is grossly and wantonly reckless in exposing others to danger, it holds him to have intended the natural consequences of his acts or omissions, and treats him as guilty of willful and wanton wrong. Our cases hold that one with knowledge of existing conditions, and conscious from such knowledge that injury or death will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously does some act, or omits to discharge some duty, which produces the injurious result, is sufficient to establish willful or wanton conduct. (*Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 157 P. 2d 822; *Elliott v. Peters*, 163 Kan. 631, 185 P. 2d 139; *Steinmeyer v. McPherson*, 171 Kan. 275, 232 P. 2d 236; *Perry v. Schmitt*, 184 Kan. 758, 339 P. 2d 36; *Blackburn v. Colvin*, 191 Kan. 239, 380 P. 2d 432;

*Ralls v. Caliendo*, 198 Kan. 84, 422 P. 2d 862; *Duckers v. Lynch*, 204 Kan. 649, 465 P. 2d 945.)

In *Blackburn v. Colvin*, supra, it was said that in order for the plaintiff to recover it is not necessary that his evidence establish a formal and direct intention to injure any particular person. It is sufficient if it indicated that degree of indifference to the rights of others which may justly be characterized as reckless. Reckless is an indifference whether wrong is done or not, and is a stronger term than ordinary negligence. To be reckless, conduct must be such as to evince disregard of or indifference to consequences, under circumstances involving danger to life or safety of others, although no harm was intended.

In *Frazier v. Cities Service Oil Co.*, supra, it was said that to constitute wantonness, the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because indifferent to whether it occurred or not.

In *Perry v. Schmitt*, supra, this court stated that an act has been held sufficient to constitute wantonness if it indicates a reckless disregard for the rights of others with a total indifference to the consequences, although a catastrophe might be the natural result.

A reading of the record discloses the following admitted and uncontroverted facts: (1) The defendant had knowledge of existing conditions that the gas heaters in the various rooms of the house were unvented and she had been warned they were "bad" and should be vented; (2) the defendant's conscious attitude from such knowledge was one of indifference as to whether her failure to act on the warning would likely or probably result in injury or death to others; (3) the decedent was on the defendant's property as a social guest of Moore, and (4) the decedent's death was a result of carbon monoxide poisoning which was caused by the use of the defective open-faced unvented gas heater supplied by the defendant.

Considered in the light most favorable to the plaintiff, we are of the opinion her evidence sustained the burden of establishing a *prima facie* case of willful or wanton conduct on the part of the defendant. The defendant knew of the existing condition of the unvented heaters, which is sufficient under the facts and circumstances to support the inference she knew or should have known they created a dangerous condition from which injury or death would likely or

probably result from her failure to install proper vents. Moreover, knowing of the dangerous condition created on the property, her indifference to the consequences was established by the evidence. Magill moved out of the house because the defendant would do nothing but let the house deteriorate, and she was not concerned enough to replace the unvented heaters. In addition, she told Ward she would not fix the heaters or the house in any way.

Considering the foregoing in its totality, it is sufficient to indicate a reckless disregard for the rights of others with a total indifference and unconcern for the probable consequences under circumstances involving danger to life or safety of others, although no harm was intended.

The district court erred in sustaining the defendant's motion for directed verdict. The cause is remanded to the district court with instructions to submit the cause to the jury under appropriate instructions, after opportunity is given the defendant to introduce her testimony.

It is so ordered.