Kennedy, J.
I. Introduction
{¶ 1} Appellants, Jeremy Pauley and his mother, appeal from a judgment of the Fourth District Court of Appeals that affirmed summary judgment in favor of the city of Circleville regarding appellants’ civil action for injuries Jeremy sustained while sledding in the city’s park. We accepted the appellants’ discretionary appeal, which sets forth a single proposition of law: “Recreational user immunity does not extend to man-made hazards upon real property that do not further or maintain its recreational value.”
{¶ 2} Under the recreational-user statutes (R.C. 1533.18 and 1533.181), property owners who open their premises to recreational users free of charge are immune from liability for injuries suffered by recreational users while they are engaged in a recreational activity. Appellants urge this court to hold that if a property owner modifies his or her property in a manner that creates a hazard without promoting or preserving the recreational character of the property, immunity does not apply. Finding no support in statutory or case law, we decline to adopt such an exception. Therefore, we affirm the judgment of the court of appeals.
II. Facts and Procedural History
{¶ 3} The city owns Barthelmas Park, which contains ball fields, a playground, and various structures, such as a concession stand and picnic shelters. Entry to the park is free of charge.
{¶ 4} In the summer of 2006, the city was offered free topsoil that was excavated from a nearby construction site. The city uses topsoil for numerous projects, including reseeding the park. Consequently, the city accepted approxi *213 mately 150 to 200 truckloads, which were taken to its maintenance facility for storage. When that facility reached capacity, the remaining topsoil was taken to the park and emptied onto the ground, where it formed two mounds approximately 15 feet high.
{¶ 5} On the afternoon of January 24, 2007,18-year-old Jeremy Pauley and his friends Kevin Baisden, Danielle Ziemer, and Natasha Cox decided to go snow sledding at the park. Jeremy and Kevin began sledding at about 5 p.m., while the girls looked on. At approximately 6:00 p.m., as it began getting dark, Jeremy decided on a new location for his last sled run, which was, in fact, one of the mounds of dirt that had been stored at the park by the city. Kevin moved the car so that its headlights illuminated the hill. Although there were other sled tracks on the mound, this was the first time that Jeremy had sledded down it. In his deposition, Jeremy asserted that “[t]o the very, very far left side [of the hill] away from where I went sledding there was a little bit of brush or something, but nothing around where I went down.”
{¶ 6} Jeremy claimed that as he sledded down the hill, he “hit an immovable object” and “instantly went numb” and could not move his body. Realizing that Jeremy was critically injured, Kevin Baisden called 9-1-1. At the time, Kevin did not notice any obstacle in Jeremy’s path. However, the day after the accident, Kevin went back to the park and observed an object that looked like a railroad tie in the area where Jeremy was injured.
{¶ 7} Jeremy suffered a broken neck, which caused him to become a quadriplegic. He and his mother filed a complaint alleging that the city acted negligently, recklessly, and wantonly in dumping debris in the park, which resulted in a physical defect that caused Jeremy’s injuries. The complaint alleged that “waste and debris * * * created an inherently dangerous situation which no user of the park could have anticipated and thus substantially altered the nature and characteristic of the public property.”
{¶ 8} The trial court granted the city’s motion for summary judgment, finding that the city was immune from suit under R.C. 1533.181. The court of appeals affirmed the trial court’s judgment, with one judge dissenting. 2012-Ohio-2378, 971 N.E.2d 410 (4th Dist.).
{¶ 9} We accepted the appellants’ discretionary appeal. 133 Ohio St.3d 1422, 2012-Ohio-4902, 976 N.E.2d 913.
{¶ 10} Appellants claim that “the recreational user immunity statute is designed to preclude the right to recovery of civil damages only in specific instances.” Appellants contend that R.C. 1533.181 does not apply when a property owner makes the property “more dangerous without promoting or preserving recreational activities.”
*214 {¶ 11} The city argues that R.C. 1533.181 provides a “bright-line rule”: “If a premises is freely open to the public for recreational purposes and a person is injured while using the premises for a recreational purpose, the landowner has no duty to that user to keep the premises safe.” The city argues that appellants “improperly ask this Court to judicially create an exception or limitation to recreational immunity that does not exist in the Statute.”
III. Analysis

Recreational-User Immunity

{¶ 12} We begin our analysis by examining the statute, as well as applicable case law.
{¶ 13} R.C. 1533.181(A) states:
No owner, lessee, or occupant of premises:
(1) Owes any duty to a recreational user to keep the premises safe for entry or use;
(2) Extends any assurance to a recreational user, through the act of giving permission, that the premises are safe for entry or use;
(3) Assumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user.
{¶ 14} R.C. 1533.18 states:
As used in sections 1533.18 and 1533.181 of the Revised Code:
(A) “Premises” means all privately owned lands, ways, and waters, and any buildings and structures thereon, and all privately owned and state-owned lands, ways, and waters leased to a private person, firm, or organization, including any buildings and structures thereon.
(B) “Recreational user” means a person to whom permission has been granted, without the payment of a fee or consideration to the owner, lessee, or occupant of premises, other than a fee or consideration paid to the state or any agency of the state, or a lease payment or fee paid to the owner of privately owned lands, to enter upon premises to hunt, fish, trap, camp, hike, or swim, or to operate a snowmobile, all-purpose vehicle, or four-wheel drive motor vehicle, or to engage in other recreational pursuits.
*215 {¶ 15} “Premises” under R.C. 1533.18(A) includes land owned by municipalities and the state. LiCause v. Canton, 42 Ohio St.3d 109, 110, 537 N.E.2d 1298 (1989).
{¶ 16} In determining whether immunity applies, courts examine the essential character of the property. First, the property must be held open to the public for recreational use, free of charge. See id. at syllabus; Fryberger v. Lake Cable Recreation Assn., Inc., 40 Ohio St.3d 349, 533 N.E.2d 738 (1988), paragraph one of the syllabus. Compare Loyer v. Buchholz, 38 Ohio St.3d 65, 526 N.E.2d 300 (1988) (private pool not held open for public use is not protected by R.C. 1533.181); Brinkman v. Toledo, 81 Ohio App.3d 429, 611 N.E.2d 380 (6th Dist.1992) (even though sidewalks and streets are often used for recreational purposes, such premises are not protected by recreational-user immunity because they do not have the essential character of land held open to the public for recreational use).
{¶ 17} The character of the premises envisioned by the recreational-user statute involves “the true outdoors,” because “[m]ost of the recreational activities enumerated in R.C. 1533.18(B) are generally conducted in ‘the wide open spaces,’ such as parks or wilderness tracts * * *." Loyer at 67. Recreational premises typically “include elements such as land, water, trees, grass, and other vegetation.” Miller v. Dayton, 42 Ohio St.3d 113, 114, 537 N.E.2d 1294 (1989).
{¶ 18} However, “[t]o qualify for recreational user immunity, property need not be completely natural, but its essential character should fit within the intent of the statute.” Id. For example, a softball field requires certain manmade elements, but those improvements do not change the essential character of the property so as to remove it from the protection of the statute. The property is still held open for public use for recreational purposes. Id. at 115. Compare Light v. Ohio Univ., 28 Ohio St.3d 66, 68, 502 N.E.2d 611 (1986) (a gymnasium, an entirely manmade structure, “is not within the contemplation of the recreational user immunity statutes”).
{¶ 19} The types of recreational activities that qualify as a recreational use are diverse. R.C. 1533.181(B) lists hunting, fishing, trapping, camping, swimming, operating a snowmobile, all-purpose vehicle, or four-wheel-drive motor vehicle, and “other recreational pursuits” as examples of the types of activities contemplated by the statute. And courts have broadly construed “other recreational pursuits” to include sledding, Marrek v. Cleveland Metroparks Bd. of Commrs., 9 Ohio St.3d 194, 459 N.E.2d 873 (1984); horseback riding, Crabtree v. Shultz, 57 Ohio App.2d 33, 384 N.E.2d 1294 (10th Dist.1977); watching others swim, Fetherolf v. Ohio Dept. of Natural Resources, 7 Ohio App.3d 110, 454 N.E.2d 564 (10th Dist.1982); motorcycle riding, Kelley v. Differential Corp., 3d Dist. Hancock *216 No. 5-81-35, 1982 WL 6787 (May 6, 1982); using a swingset, Vitai v. Sheffield Lake, 9th Dist. Lorain No. 4045, 1987 WL 5561 (Jan. 21, 1987); riding a merry-go-round, Miller v. Sheffield Lake, 9th Dist. Lorain No. 4133, 1987 WL 9477 (Apr. 8, 1987); riding a bicycle, Erbs v. Cleveland Metroparks Sys., 8th Dist. Cuyahoga No. 53247, 1987 WL 30512 (Dec. 24, 1987); and watching others play baseball, Buchanan v. Middletown, 12th Dist. Butler No. CA86-10-156, 1987 WL 16062 (Aug. 24, 1987).
{¶ 20} However, activities such as pulling down a soccer goalpost (Fuehrer v. Westerville City School Dist. Bd. of Edn., 61 Ohio St.3d 201, 574 N.E.2d 448 (1991)), or marching in a parade on a public street (McGuire v. Lorain, 9th Dist. Lorain No. 10CA009893, 2011-Ohio-3887, 2011 WL 3426186 (Aug. 8, 2011)), are not the types of activities envisioned by the recreational-user immunity statutes.

Property Owners Owe No Duty of Care to Keep Their Premises Safe for Entry or Use by Recreational Users

{¶ 21} Under R.C. 1533.181(A)(1), “[n]o owner owes any duty to a recreational user to keep the premises safe for entry or use.” (Emphasis added.) A duty is “[a] legal obligation that is owed or due to another and that needs to be satisfied.” Black’s Law Dictionary 580 (9th Ed.2009). Generally speaking, “[i]f there is no duty, no liability can follow.” Collins v. Sabino, 11th Dist. Trumbull No. 96-T-5590, 1997 WL 531246, *4 (Aug. 29, 1997), fn. 5. Consequently, an owner cannot be held liable for injuries sustained during recreational use “even if the property owner affirmatively created a dangerous condition.” Erbs v. Cleveland Metroparks Sys. at *2, citing Milliff v. Cleveland Metroparks Sys., 8th Dist. Cuyahoga No. 52315, 1987 WL 11969 (June 4, 1987); see also Phillips v. Ohio Dept. of Natural Resources, 26 Ohio App.3d 77, 79, 498 N.E.2d 230 (10th Dist.1985) (property owner not liable to recreational user for willful and wanton failure to warn of dangerous condition); Press v. Ohio Dept. of Natural Resources, Ct. of Cl. No. 2005-100004-AD, 2006-Ohio-1024, 2006 WL 538106, ¶ 11 (property owner not liable to recreational user for injuries caused by owner’s affirmative creation of a hazard). The determination of whether R.C. 1533.181 applies depends not on the property owner’s actions, but on whether the person using the property qualifies as a recreational user. Estate of Finley v. Cleveland Metroparks, 189 Ohio App.3d 139, 2010-Ohio-4013, 937 N.E.2d 645, ¶ 50 (8th Dist.); Look v. Cleveland Metroparks Sys., 48 Ohio App.3d 135, 137, 548 N.E.2d 966 (8th Dist.1988).
{¶ 22} In this case, appellants admitted that Pauley was a recreational user within R.C. 1533.181, as he clearly was. He entered the park, free of charge, to go sledding. Thus, the city owed him no duty to keep the premises safe, and the city’s alleged creation of a hazard on the premises does not affect its immunity.
*217 Miller v. Dayton and Ryll v. Columbus Fireworks Display Co., Inc.
{¶ 23} In arguing that property owners should not be afforded immunity if they “render!] their land more dangerous without promoting or preserving recreational activities,” appellants rely primarily upon Ryll v. Columbus Fireworks Display Co., Inc., 95 Ohio St.3d 467, 2002-Ohio-2584, 769 N.E.2d 372, and Miller v. Dayton, 42 Ohio St.3d 113, 537 N.E.2d 1294.
{¶ 24} Appellants cite Ryll for the proposition that even if an injured person was a recreational user within the meaning of R.C. 1533.18(B), the property owner is not automatically afforded immunity in all cases. “In addition to considering whether the plaintiff was a ‘recreational user’ within the meaning of R.C. 1533.18(B),” appellants urge, “courts must also determine whether the cause of the injury is attributable to premises that are truly recreational.”
{¶ 25} Citing Miller, appellants then ask this court to hold that “[i]n lawsuits involving man-made objects, liability has been precluded only when such improvements enhance the recreational activities on the property.” We do not agree.
{¶ 26} In Ryll, a spectator was attending a fireworks show sponsored by the city of Reynoldsburg when he was fatally injured by shrapnel from a fireworks shell. The spectator’s estate sued the city, which asserted that it was immune from liability under the recreational-user statutes. We held that the recreational-user statute immunizes property owners from injuries that arise from a defect in the premises. Because the shrapnel was not a defect in the premises, immunity did not apply.
{¶ 27} In Miller, the plaintiff was playing in a softball tournament in a park owned by the city of Dayton when he was injured sliding into second base. The plaintiff sued the city seeking to recover for his injuries. The trial court granted summary judgment to the city pursuant to R.C. 1533.181.
{¶ 28} The court of appeals reversed the trial court’s judgment. The court of appeals held that a baseball diamond is an artificial, manmade development, bearing little resemblance to land in its natural state. Thus, the court of appeals held that the plaintiff was not a recreational user, and the city was not immune.
{¶ 29} This court held that “[i]n determining whether a person is a recreational user under R.C. 1533.18(B), the analysis should focus on the character of the property upon which the injury occurs and the type of activities for which the property is held open to the public.” Miller, 42 Ohio St.3d 113, 537 N.E.2d 1294, at paragraph one of the syllabus.
{¶ 30} In its analysis, this court stated that “the presence of man-made improvements on a property does not remove the property from statutory protection.” Id. at 114. “To qualify for recreational-user immunity, property need not be completely natural, but its essential character should fit within the *218 intent of the statute.” Id. We further instructed that the premises should be “viewed as a whole” to determine whether users enter to hunt, fish, trap, camp, hike, swim, or engage in other recreational pursuits. Id. at 115.
{¶ 31} Applying this test, we held that “[t]he essential character of [the ballpark] is that of premises held open to the plaintiff, without fee, for recreational purposes” and that improvements such as “dugouts, fences, base plates, and similar manmade structures” did not change the park’s essential character as outdoor premises used for recreational purposes within the recreational-user statutes. Id. Thus, the plaintiff was a recreational user, and the city was immune from suit.
{¶ 32} We find that the instant case is distinguishable from both Ryll and Miller. In Ryll, the injury was caused by a fireworks shell, not by a defect on the city’s premises, so R.C. 1533.181 did not immunize the city from liability. In the instant case, the railroad-tie-like object was embedded in a mound of dirt that was part of the park at the time Jeremy suffered his accident. Therefore, the injury was caused by a defect in the premises, making Ryll inapplicable.
{¶ 33} In Miller, there was no discussion of a defect in the premises. Indeed, the recreational-user statutes protect property owners from such defects. Rather, the question in Miller was whether manmade improvements, such as a baseball diamond, changed the essential character of the property to something other than an outdoor space used for something other than an outdoor recreational activity. Accordingly, Miller lends no support to appellants’ proposition that liability is precluded for injuries caused by manmade improvements only when such improvements enhance the recreational activities on the property. Whether the manmade improvements in Miller enhanced the recreational activities in the park was irrelevant. The question was whether the improvements so changed the essential character of the park as to take it outside the protection of the statute. We cannot accept as reasonable any contention that the presence of a railroad tie in a public park changes its essential character as a recreational space.
{¶ 34} Moreover, to adopt appellants’ reading of Miller would require property owners to make their property safe for entry and use in direct contravention of the plain language in R.C. 1533.181(A)(1). “It is not this court’s role to apply a judicially created doctrine when faced with statutory language that cuts against its applicability.” (Emphasis sic.) Wallace v. Ohio Dept. of Commerce, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 33.
{¶ 35} In addition, adopting appellants’ interpretation of Miller would conflict with the purpose of the recreational-user statute, which is to encourage owners of premises suitable for recreational pursuits to open their land to public use *219 without fear of liability. Moss v. Dept. of Natural Resources, 62 Ohio St.2d 138, 142, 404 N.E.2d 742 (1980); Marrek v. Cleveland Metroparks Bd. of Commrs., 9 Ohio St.3d at 198, 459 N.E.2d 873. Removing the protection of immunity would undoubtedly cause property owners to restrict recreational use of their properties, or close them entirely, from fear of liability.
{¶ 36} Finally, even assuming arguendo that we agreed with appellants’ interpretation of Miller, it would not change the outcome in this case. Miller requires that the property be “viewed as a whole,” and only when the “essential character” of the property has been altered to something other than an outdoor property on which outdoor recreational activities occur does immunity fall away.
{¶ 37} The park in this case is an outdoor property with trees and grass and is open to the public free of charge for picnicking and sporting activities such as sledding, baseball, soccer, and basketball, as well as other recreational activities that inevitably occur in parks, such as tinkering with a model plane, reading poetry, or jogging. See Miller, 42 Ohio St.3d at 115, 537 N.E.2d 1294. The alleged defect in this case is an object resembling a railroad tie. When viewing the park property “as a whole,” the existence of a single railroad tie does not change the essential character of the park to something other than a property that is open for recreational use.
{¶ 38} Critics may claim that our decision reaches a harsh result. However, the language of the recreational-user statute is plain: a property owner owes no duty to a recreational user to keep the property safe for entry or use. Creating an exception to this immunity is a policy decision that comes within the purview of the General Assembly, not the courts. The General Assembly understands how to draft laws that contain exceptions, but included no exception that can be applied in this case. And we will not create an exception by judicial fiat. Akron v. Rowland, 67 Ohio St.3d 374, 380, 618 N.E.2d 138 (1993).
IV. Conclusion
{¶ 39} Pauley entered the park free of charge and engaged in the recreational activity of snow sledding on the date of his injury. Therefore, as he conceded, he was a recreational user as defined in R.C. 1533.18(B). Therefore, the city was not liable for his injuries, because it owes no duty to recreational users to ensure that the park is safe for entry or use. Accordingly, we affirm the judgment of the court of appeals.
Judgment affirmed.
O’Donnell, Lanzinger, and French, JJ., concur.
*220 O’Connor, C.J., concurs in judgment only.
Pfeifer and O’Neill, JJ., dissent.