[Cite as *Jacobs v. Oakwood*, 2016-Ohio-5327.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103830**

# ALVIN JACOBS, ET AL.

PLAINTIFFS-APPELLEES

vs.

# VILLAGE OF OAKWOOD, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-833308

**BEFORE:** Blackmon, P.J., Laster Mays, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** August 11, 2016

**ATTORNEYS FOR APPELLANTS**

James A. Climer
Kyle B. Melling
Frank H. Scialdone
Mazanec, Raskin & Ryder, L.P.A.
34305 Solon Rd.
100 Franklin's Row
Solon, Ohio 44139


**ATTORNEYS FOR APPELLEES**

Jeffrey A. Leikin
Kathleen St. John
Nurenberg Paris Heller & McCarthy
600 Superior Ave., East
Suite 1200
Cleveland, Ohio 44114

PATRICIA ANN BLACKMON, P.J.:

{¶1} The Village of Oakwood, et al. ("Oakwood"), appeals the trial court's denial of its summary judgment motion and the court's finding that genuine issues of material fact exist as to whether Oakwood is entitled to immunity from liability under R.C. Chapters 2744 and 1533. Oakwood assigns the following error for our review:

I. The trial court erred when it denied the defendant/appellant Village of Oakwood the benefit of immunity.

{¶2} Having reviewed the record and pertinent law, we affirm the trial court's denial of summary judgment, albeit for different reasons than detailed in the court's journal entry, and remand for proceedings consistent with this opinion. The apposite facts follow.

## Facts and Procedural History

{¶3} On September 1, 2013, Alvin Jacobs attended a picnic at the Oakwood Village Community Park, which is operated and maintained by Oakwood. The park has a playground with two toddler harness swings; one black swing with a bench seat; and one yellow "sling swing" with a saddle seat.

{¶4} While at the park, Jacobs's teenaged niece was swinging on the yellow swing, and Jacobs's mother was swinging on the black swing. Jacobs's mother lasted for "a couple of minutes, so probably maybe four, five passes," before she felt queasy and stopped swinging. Jacobs decided to swing with his niece. Jacobs's niece switched to the black bench swing, and Jacobs got on the yellow sling swing. According to Jacobs,

he was "not swinging too high, but [he had] a pretty steady swing. * * * It was more like an intermediate swing."

**{¶5}** After a few minutes, the grommet that held the saddle seat to the chain broke, and Jacobs fell to the ground injuring his ankles and head. Jacobs was 30 years old, 5'10" tall, and weighed approximately 235 pounds at the time of this incident.

**{¶6}** On September 24, 2014, Jacobs and his wife filed a complaint against Oakwood alleging negligence and loss of consortium. Oakwood filed a motion for summary judgment based on political subdivision immunity under R.C. Chapter 2744; assumption of risk; and recreational user immunity under R.C. 1533.181. On November 17, 2015, the court denied Oakwood's summary judgment motion, finding genuine issues of material fact on both immunity issues and the assumption of risk theory. It is from this order that Jacobs appeals.

## Summary Judgment

**{¶7}** Appellate review of granting summary judgment is de novo. Pursuant to Civ.R. 56(C), the party seeking summary judgment must prove that (1) there is no genuine issue of material fact; (2) they are entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

## Final Appealable Order

**{¶8}** Pursuant to R.C. 2744.02(C), "[a]n order that denies a political subdivision * * * the benefit of an alleged immunity from liability as provided in this chapter or any

other provision of the law is a final order." *See also Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 78. Therefore, the court's order denying summary judgment regarding the issues of sovereign immunity under R.C. 2744.02 and recreational user immunity under R.C. 1533.181 is final and appealable.

## Political Subdivision Immunity

{¶9} R.C. Chapter 2744 absolves political subdivisions of tort liability, subject to certain exceptions. Determining whether a political subdivision is immune from tort liability involves a three-tiered analysis. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141 (2000). The first tier is the general rule that a political subdivision is immune from liability in performing either a governmental or proprietary function. R.C. 2744.02(A)(1). The parties do not dispute that Oakwood is a political subdivision and the maintenance and operation of the park and the playground is a governmental function. *See* R.C. 2744.01(C)(2)(u)(i).

{¶10} Once the presumption of immunity has been established, the second tier of this analysis involves the court's determination of "whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability." (Citation omitted.) *Riffle v. Physicians & Surgeons Ambulance Serv.*, 135 Ohio St.3d 357, 2013-Ohio-989, 986 N.E.2d 983, ¶ 15. The parties agree that the statutory exception at issue in the case at hand is R.C. 2744.02(B)(4), which states, in pertinent part, as follows:

> [P]olitical subdivisions are liable for injury * * * to [a] person * * * that is caused by the negligence of their employees and that occurs * * * and is due

to physical defects within or on the grounds of buildings that are used in connection with the performance of a governmental function * * *.

{¶11} The third and final tier of the political subdivision immunity analysis is codified in R.C. 2744.03(A), which lists defenses or immunities that a municipality may use to reinstate nonliability. If a plaintiff fails to establish an exception to immunity under R.C. 2744.02(B), the analysis need not proceed to the third-tier defenses. *Sims v. Cleveland*, 8th Dist. Cuyahoga No. 92680, 2009-Ohio-4722, ¶ 16.

### Evidence in the Record

{¶12} Evidence in the record shows that Oakwood routinely inspected the swing in question, and on May 5, June 11, July 5, August 6, and August 29, 2013, found the swing to be in good repair. Jacobs's injury occurred on September 1, 2013, three days after the latest inspection. It is undisputed that Oakwood installed the swing in question on the playground and did not post safety or warning signs. According to the evidence, however, the following was embossed on the bottom of the sling swing's seat:

Warning
Improper use
Maintenance installation or vandalism
can damage seat and lead to serious injury
For residential
use by one child only

{¶13} Jacobs argues that "[t]here is evidence that Oakwood's employees were negligent in installing a residential swing for use by children only in the municipal park; in failing to discover and correct this mistake; and in failing to warn that the swing was not to be used by adults." Jacobs further argues that a genuine issue of material fact

exists "as to whether [his] injury was due to a 'physical defect' because the swing used in the park was not fit for its intended purposes, and no warnings were posted that it was fit only for children to use."

{¶14} Oakwood, on the other hand, argues that Jacobs failed to submit any evidence that installing a residential swing on the playground constituted a physical defect. Oakwood specifically argues that its expert report contained evidence that the sling swing's "Residential" designation did not contribute to the swing breaking when Jacobs used it. Oakwood further argues that Jacobs failed to challenge, or even address, this evidence, and, thus, failed to create a genuine issue of material fact.

{¶15} Oakwood further argues that the failure to place a warning sign regarding the swing's "safety limitations" does not constitute a physical defect as a matter of law. Oakwood specifically argues that there are no statutes, codes, regulations, or other guidelines "that mandate, advise or even suggest that playgrounds in public parks should be constructed for use by adults."

{¶16} In *Canidate v. Cuyahoga Metro. Hous. Auth.*, 8th Dist. Cuyahoga No. 101753, 2015-Ohio-880, ¶ 19, this court held that a "'physical defect' is defined as a perceivable imperfection that diminishes the worth or utility of the object at issue." Furthermore, "the R.C. 2744.02(B)(4) physical defect exception may apply if the instrumentality that caused appellee's injury did not operate as intended due to a perceivable condition or if the instrumentality contained a perceivable imperfection that

impaired its worth or utility." *Jones v. Delaware City School Dist. Bd. of Edn.*, 2013-Ohio-3907, 995 N.E.2d 1252, ¶ 22 (5th Dist.).

{¶17} In denying summary judgment in the instant case, the trial court found that

the swing may have constituted a latent defect in the park due to the failure to warn the public of the equipment's safety limitations. Routine inspections would have exposed employees to the warning, printed on the underside of each swing, during each inspection. Whether the failure to warn under the circumstances constitutes a defect and whether the inspections provided notice of the defect presents genuine issues of material fact.

{¶18} The trial court's journal entry denying summary judgment does not address whether the installation of residential equipment on the playground constitutes a physical defect.

{¶19} Oakwood service department director Tom Haba testified in deposition that Oakwood purchased the swings for the playground, and he assumed the harness swings were to be used by toddlers, and the sling swing was "more for children." Asked if he understood, as service director, that both adults and children would use the sling swing, Haba testified as follows: "No, I did not. * * * You know, if you think swings, you don't think of adults being on the swings * * *." Haba testified that, as to the swing at issue in this case, the grommet broke because there was "too much weight on it."

{¶20} During Haba's deposition, the following colloquy took place regarding residential versus commercial playground equipment:

Q:    And [the sling swing is] to be used at homes for residential purposes, correct?

A: It says, "for residential use."

Q: So using it for commercial use would be an improper use, correct?

A: I'm not going to answer that.

Q: Do you think putting a swing at a playground is the same as residential use?

A: I don't want to answer that.

\* \* \*

Q: "For residential use" does not mean using it in a playground, correct?

A: I would believe it would be more for residential use, which is at a house.

{¶21} Oakwood service department employee John Moore testified in deposition that when he inspects the swings on the playground, he inspects "everything," including the grommets and the chains. However, he has never read the warning on the bottom of the sling swing seat. Asked if he can "agree that a swing that's made for residential use and for use for children only would pose a hazard to an adult using that swing, correct," Moore replied, "Yeah."

{¶22} Plaintiffs' expert witness, Donald A. Kadunc, Ph.D., who is a mechanical engineering consultant, stated that "[t]he accident seat was similar to seats rated for children 5 to 12 years old \* \* \*." Dr. Kadunc concluded that "the cause of the failed swing seat" in the instant case was as follows:

> In summary and conclusion it is the opinion of the undersigned to a reasonable degree of engineering certainty that the accident seat was not suitable for its intended purpose. It showed obvious signs of extrusion of

the connection which was a result over time. The inspection of August 29, 2013, could have and should have caused the seat to be taken out of service. The Village of Oakwood is responsible for the accidental injury to Alvin Jacobs.

{¶23} Dr. Kadunc's report does not address the issue that this swing was for residential use by one child only. Rather, Dr. Kadunc's opinion is that the sling swing showed evidence of wear and tear, which rendered it unsuitable for swinging.

{¶24} Oakwood's expert witness, Richard P. Borkowski, who is a sport and recreation safety consultant, testified in deposition that the swing Jacobs used was "an appropriate piece of playground equipment for children." This type of swing "has never been constructed for use by adults of any age, skill or size." Additionally, Borkowski opined that

> [t]he major difference between a residential and commercial swing is not in regard to safety, but rather longevity. A commercial swing should last longer in terms of use, weather and abuse. It also reduces the threat of vandalism[.] I know of no commercial swing however that is expected to support large adults. Mr. Jacobs should have used common sense and self-responsibility and not use a children's piece of equipment whether it was residential or commercial.

{¶25} Borkowski concluded that the swing broke when "the grommet supporting the chain ripped through" the sling swing seat. In response to Jacobs's expert's conclusion, Borkowski's review of the evidence showed that

> [t]here were no signs of fatigue or defects on any of the swing parts. It was only the combination of size, weight, [and] the force created by swinging for between 3 and 5 minutes that caused the grommet to be torn from the body of the swing. * * * I would disagree that the swing should

have been removed, during the second of two inspections, in August. The fact that an experienced staff did not remove the swing seat and the review of the photos demonstrates just the opposite. This was a serviceable swing that broke because of the size, weight and swinging power of a 235 or 238 lb. male adult using a swing designed for children.

**Improper Use as a Physical Defect**

**{¶26}** Ohio courts have expanded the definition of "physical defect" to include equipment that did not operated as intended due to a perceivable condition. *See Leasure v. Adena Local School Dist.*, 2015-Ohio-3071, 973 N.E.2d 810 (4th Dist.) ("failure to properly set up the bleachers caused them to become unstable and, thus, to fail to operate as intended," which "gave rise to the physical defect"); *DeMartino v. Poland Local School Dist.*, 7th Dist. Mahoning No. 10MA19, 2011-Ohio-1466 (operating a lawn mower without the required discharge chute may constitute a physical defect and cause the equipment to not operate as intended); *Yeater v. Bd. of Edn., v. LaBrae School Dist.*, 11th Dist. Trumbull No. 2009-T-0107, 2010-Ohio-3684 (whether loose bolts caused volleyball equipment to fail was a factual issue to be determined regarding the physical-defect exception to statutory immunity).

**{¶27}** In following our sister courts, we determine that installing a residential swing in a nonresidential setting, such as the playground, may constitute a physical defect if the swing did not operate as intended. Both experts in this case agree that this swing

was intended for use by children. However, there is contradictory evidence in the record as to whether the non-residential use, i.e., on the playground, was a factor in the sling swing's failure. Jacobs submitted expert evidence that the difference between a commercial and residential swing lies in the longevity and that the nonresidential use did not contribute to the swing's failure in the instant case. However, an Oakwood employee testified that the swing in question was "more for residential use, which is at a house," and Oakwood's expert testified that the swing showed signs of wear and tear.

{¶28} Upon review, we find a genuine issue of material fact regarding whether Oakwood's installation of a residential-grade swing, fit for use by one child only, on the playground caused the equipment to not operate as intended. Accordingly, we affirm the court's denial of summary judgment under R.C. Chapter 2744, albeit for a narrower reason than articulated in the court's journal entry.

## Recreational User Immunity

{¶29} Pursuant to R.C. 1533.181, landowners do not owe "any duty to a recreational user to keep the premises safe for entry or use." Recreational user is defined in R.C. 1533.18(B) as "a person to whom permission has been granted, without the payment of a fee or consideration to the owner * * * of the premises * * * to enter upon the premises to * * * engage in * * * recreational pursuits." The Ohio Supreme Court has held that "[u]nder the recreational-user statutes, property owners who open their premises to recreational users free of charge are immune from liability for injuries

suffered by recreational users while they are engaged in a recreational activity." *Pauley v. Circleville*, 137 Ohio St.3d 212, 2013-Ohio-4541, 998 N.E.2d 1083, ¶ 2.

**{¶30}** In *Pauley*, the Ohio Supreme Court noted that using a swing set in a park is one type of recreational activity contemplated by R.C. 1533.181. *Id.* at ¶ 19. Oakwood Village Ordinance 140.07 limits the use of recreational facilities, including the park, to Oakwood residents. Residents of Oakwood may also reserve and rent the park, and in the event this happens, nonresidents may use the park "under the direct supervision of the Oakwood resident renting or reserving such facility."

**{¶31}** Jacobs was not a resident of Oakwood; however, he was at the park on September 1, 2013, because he was invited to a picnic by an Oakwood resident who reserved and rented the park for a $50 fee plus a $150 deposit. Therefore, Jacobs was a guest of another person who paid a fee to reserve and rent the park. In *Jarrett v. S. Euclid*, 64 Ohio App.3d 743, 744, 582 N.E.2d 1098 (8th Dist.1990), this court held that R.C. 1533.181 "does not immunize an owner where the premises in question are not held open to members of the public for gratuitous use." *Jarrett* involved a municipal pool that was "not open for use by the general public but is restricted to South Euclid and Lyndhurst residents and their non-resident guests." *Id.*

**{¶32}** Accordingly, we find that R.C. 1533.181, the recreational-user statute, does not apply to this case, because Jacobs's permissible use of the park involved the payment of a fee. Therefore, the court did not err in denying Oakwood's motion for summary judgment on this issue.

**{¶33}** Oakwood's sole assignment of error is overruled.

**{¶34}** Judgment affirmed and case remanded for proceedings consistent with this opinion.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR