[Cite as *Debold v. Siesel Distrib., L.L.C.*, 2024-Ohio-1851.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

AVREE DEBOLD, ET AL.,

    PLAINTIFFS-APPELLANTS,

CASE NO. 13-23-26

  v.

SIESEL DISTRIBUTING, LLC, ET AL.,

O P I N I ON

    DEFENDANTS-APPELLEES.

Appeal from Seneca County Common Pleas Court
Trial Court No. 22-CV-0198

**Judgment Affirmed**

**Date of Decision:  May 13, 2024**

**APPEARANCES:**

    *Kevin L. Lenson and Ian D. Fijalkovich* for Appellants

    *Terry Gernert* for Appellees, Siesel Distributing LLC and Siesel Distributing, Inc.

    *Shannon J. George* for Appellees, Scott Siesel, Mary Siesel and Emily Siesel

Case No. 13-23-26

**WILLAMOWSKI, P.J.**

{¶1} Plaintiffs-appellants Avree Debold ("Avree"), Tammy Debold ("Tammy"), and Brian Debold ("Brian"), collectively known as "Appellants", bring this appeal from the judgment of the Court of Common Pleas of Seneca County granting summary judgment to defendants-appellees Emily Siesel ("Emily"), Scott Siesel ("Scott"), and Mary Siesel ("Mary"), collectively known as "Appellees".[1] Appellants allege on appeal that the trial court erred in granting summary judgment to Appellees. For the reasons set forth below, the judgment is affirmed.

*Factual Background*

{¶2} On January 26, 2014, Avree was at the home of Appellees where she and other people went to play. While there, Scott towed the girls on a tube behind his snowmobile. After several rides, Scott parked the snowmobile and went inside. The girls eventually decided to continue to ride the snowmobile. Emily obtained the keys and drove the snowmobile while towing Avree on the tube. At one point while Emily was driving, the tube struck an object and Avree was injured.

*Procedural Background*

{¶3} On August 29, 2022, Appellants filed a complaint alleging that Emily was negligent in driving the snowmobile.[2] Appellants also alleged that Scott and

---

[1] The other defendants, Siesel Distributing, LLC and Siesel Distributing, Inc., were also granted summary judgment. However, no challenge to those judgments by Appellants are made in this case. Thus, the summary judgment in favor of those entities is final and their liability is not an issue.

[2] This complaint was a refiling of an earlier complaint that had been voluntarily dismissed without prejudice.

-2-

Mary were negligent in entrusting Emily with the snowmobile.[3]  Appellants claim that due to Emily's negligence, Avree suffered severe and permanent injury and that Tammy and Brian suffered financial injury as well as a loss of consortium. Appellees filed their answer on September 8, 2022.  In the answer, they denied the allegations and asserted multiple affirmative defenses including assumption of the risk and statutes of limitations.

{¶4} On January 9, 2023, Appellees filed a motion for summary judgment. The motion claimed that the claims were barred because of the age of Emily at the time of the incident, Avree's assumption of the risk, and the recreational user statute. Appellants filed a brief in opposition to the motion for summary judgment on April 13, 2023.  Appellees filed their response on April 28, 2023.  On August 28, 2023, the trial court granted summary judgment to Appellees.[4]  Appellants appeal from this judgment and raise the following assignment of error on appeal.

> **The trial court erred in granting summary judgment to [Appellees].**

{¶5} The sole assignment of error in this case raises the question as to whether the trial court erred in granting summary judgment.

> An appellate court reviews a trial court's summary judgment decision de novo, independently and without deference to the trial court's decision. * * * Summary judgment is appropriate only "when the requirements of Civ.R. 56(C) are met." * * * The party moving for

---

[3] A claim was also made that Scott and Mary were negligent in the care and upkeep of the equipment.  This issue was not argued on appeal and will not be addressed.
[4] The original judgment entry failed to dismiss the case and order costs.  This was corrected by a nunc pro tunc entry to provide a final judgment for review.

summary judgment must establish: (1) that there are no genuine issues of material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. * * * In ruling on a motion for summary judgment, a court may not "weigh evidence or choose among reasonable inferences * * *." * * * Rather, the court must consider the above standard while construing all evidence in favor of the non-movant. * * *

The party moving for summary judgment must identify the basis of the motion to allow the non-movant a "meaningful opportunity to respond." * * * In its motion, the moving party "must state specifically which areas of the opponent's claim raise no genuine issue of material fact and such assertion may be supported by affidavits or otherwise as allowed by Civ.R. 56(C)." * * * If the moving party fails to meet its burden, summary judgment is inappropriate; however, if the moving party meets its initial burden, the non-moving party has a "reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial * * *."

*Lillie v. Meachem*, 3d Dist. Allen No. 1-09-09, 2009-Ohio-4934, ¶21-22, citations omitted. As the standard of review is de novo, we will review whether reasonable minds could reach a verdict in favor of Appellants based upon the claims set forth in the complaint.

*Negligence*

**{¶6}** The complaint in this case alleges first that Emily was negligent.[5] "Liability for negligence is predicated upon injury caused by the failure to discharge a duty owed to the injured party." *DiGildo v. Caponi*, 18 Ohio St.2d 125, 127, 247

---

[5] The complaint makes no allegations that Emily acted recklessly or intentionally.

N.E.2d 732, (1969). "The existence of a duty in a negligence action is a question of law for the court to determine." *Mussivand v. David,* 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). "Children between the ages of seven and fourteen are presumptively incapable of negligence." *Holman v. Licking Cty.*, 107 Ohio App.3d 106, 113, 667 N.E.2d 1239 (5th Dist. 1995). To rebut this presumption, a party must present "a factual showing that the child is of sufficient maturity and capacity to avoid danger and make intelligent judgments with regard to the particular activities in which he had engaged." *Gaffney v. Sexton*, 2d Dist. Montgomery No. 13634, 1993 WL 39609 (Feb. 18, 1993)

{¶7} The evidence is undisputed that at the time of the accident, Emily was ten years of age. No evidence was presented to rebut the presumption that Emily was incapable of negligence. Emily herself testified in her deposition that she had not known until she read the manual at the deposition that riding on a tube pulled by a snowmobile was dangerous. Emily's Dep. at 48. The affidavit of Henry Lipian ("Lipian") was presented by Appellants. Doc. 36, Ex. 5. Lipian was presented as an expert witness in accident reconstruction. Doc. 36, Ex. 5. In his affidavit, Lipian made the following statements:

> A 10-year-old child such as [Emily] is developmentally immature, but still physically capable of manipulating the controls of a snowmobile, however, without the full understanding of the inherent risks. * * *
>
> * * *

Case No. 13-23-26

> Due to her immature age, lack of specific training and experience with safe snowmobile operation, [Emily] was unable to fully comprehend the element of risk, human perception and response issues, safe speed considerations, prudent operator strategy and how to control the machine especially while towing a tube with two passengers.

Doc. 36, Ex. 5. No testimony was presented that Emily was aware of the risks of what she was doing. Without some evidence showing that Emily was mature enough to appreciate the risks, she cannot be negligent as a matter of law.[6]

**{¶8}** Even if Emily were found mature enough to be negligent, there is still the issue of Avree engaging in a recreational activity. "Under the recreational activity doctrine, 'a plaintiff who voluntarily engages in a recreational activity or sporting event assumes the inherent risks of that activity and cannot recover for injuries sustained in engaging in the activity unless the defendant acted recklessly or intentionally in causing the injuries.'" *Whalen v. T.J. Automation, Inc.*, 3d Dist. Henry No. 7-18-27, 2019-Ohio-1279, ¶ 21, 134 N.E.3d 869. "No liability attaches for injuries caused by negligence that occurs during recreational activities." *Taylor v. Mathys*, 3d Dist. Union No. 14-04-32, 2005-Ohio-150, ¶ 10. The limit of liability for a defendant when the plaintiff is engaged in a recreational activity is based upon the primary assumption of the risk doctrine. *Id.* at ¶ 12. "The law simply deems certain risks as accepted by plaintiff *regardless of actual knowledge or consent.*"

---

[6] Appellants argue that this rule only applies to contributory negligence by a plaintiff, not a defendant's negligence. However, the rule is based upon the child's inability to appreciate the risks of a situation. This ability does not change based upon whether the child is the plaintiff or the defendant. Thus, it is a distinction without a difference.

*Id.* The risk must be so inherent to the activity that it cannot be eliminated for the primary assumption of the risk doctrine to apply. *Horvath v. Ish*, 134 Ohio St.3d 48, 2012-Ohio-5333, ¶ 19, 979 N.E.2d 1246. The doctrine applies regardless of the age of the participant in the recreational activity. *Gentry v. Craygraft,* 101 Ohio St.3d 141, 2004-Ohio-379, ¶ 8, 802 N.E.2d 1116. Additionally, the subjective appreciation and consent of the inherent risks by the plaintiff are immaterial to the application of the doctrine. *Id.* at ¶ 9. "Instead, recovery is dependent upon whether the defendant's conduct was either reckless or intentional." *Id.* at ¶ 13. The examination of the primary assumption of the risk is done on the activity itself, not the conduct of the plaintiff. *Ochall v. McNamer*, 10th Dist. Franklin No. 15AP-772, 2016-Ohio-8493, ¶ 36, 79 N.E.3d 1215.

{¶9} The question before this court is whether the recreational use doctrine, and thus the primary assumption of the risk doctrine, applies in this case. "Whether to apply the affirmative defense of primary assumption of the risk presents an issue of law for the court to determine." *Id.* at ¶ 39.

> A "recreational user" is a "person to whom permission has been granted, without the payment of a fee or consideration to the owner, lessee, or occupant of premises, * * * to enter upon premises to hunt, fish, trap, camp, hike, swim, or engage in other recreational pursuits." R.C. 1533.18(B). Snowmobiling is a recreational pursuit within the meaning of that statute.

*Stiner v. Dechant*, 114 Ohio App.3d 209, 214, 683 N.E.2d 26 (9th Dist. 1996). Similarly, sledding is also considered a recreational activity. *Pauley v. Circleville*,

137 Ohio St.3d 212, 2013-Ohio-4541, 998 N.E.2d 1083. In *Taylor, supra*, this Court found that participants engaged in riding on an all-terrain vehicle while pulling a homemade sled with a passenger through a snow-covered field and over hills was a recreational activity to which the primary assumption of the risk doctrine applied. Given this precedent, riding on a tube behind a snowmobile would be considered a recreational activity and the recreational activity doctrine would apply.

{¶10} The next question is whether the danger of striking an object while being pulled on a tube is inherent to the activity. A danger ordinary to an activity is one that is a foreseeable part of the activity and is common knowledge that the danger exists. *Ochall, supra* at ¶ 43. The Supreme Court of Ohio has held that striking an inanimate object while sledding is an inherent risk. *Pauley, supra.* Likewise, the risk of falling off a tube being pulled by a boat has also been deemed a foreseeable risk. *Aber v. Zurz*, 175 Ohio App.3d 385, 2008-Ohio-778, ¶ 14, 887 N.E.2d 381. Given this, riding on a tube across snow while being towed by a motor vehicle has an inherent, foreseeable risk that the tube could strike something, even if the vehicle towing it does not. The tube does not have brakes and, since it is gliding on snow, it could go many directions and is subject to slight changes in the topography. Thus, the risk of striking a stationary object while being towed by the snowmobile was a risk inherent to the activity. The primary assumption of the risk doctrine applies because Avree was a recreational user and cannot recover for mere negligence.

**{¶11}** Appellants can only recover damages if she can show that Emily was reckless or intentional in her actions.[7] No one has alleged that Emily intentionally set out to cause injury to Avree, so this Court need not address that issue. Appellants did argue that Emily was reckless because of excessive speed. Recklessness conduct requires the "conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Whalen, supra* at ¶ 33. In other words, the actor must be aware that the conduct undertaken will "in all probability result in injury" to another. *Id*.

**{¶12}** Here, the testimony of Avree in her deposition was that Emily was driving faster than Scott did right before the accident and that she thought it was too fast. Avree did not know the approximate speed. Avree admitted that Emily was not making any sharp turns and they were having fun until Emily seemed to lose control of where the tube was going. Lauren Bogner ("Lauren"), who was also riding on the tube at the time of the accident, testified in her deposition that she did not believe Emily's speed was too fast. According to Lauren, everyone was having fun and there was no fear until the tube "just went the wrong way." Lauren Dep. at 46-47. No testimony was presented that Emily had any awareness that what she was doing would likely result in an injury and that she consciously disregarded that

---

[7] A review of the complaint shows that Appellants did not allege reckless behavior. Appellants argued at oral argument that they had the right to amend the complaint to allege it at any time prior to trial. Appellants did not do so. However, since it was raised in the brief, we will address it.

risk. Emily testified that she did not even know that towing the tube could be a dangerous activity. Without any evidence of the conscious choice to disregard the risk, Emily's behavior was not reckless. Appellants have therefore failed to present a claim against Emily.

*Negligent Entrustment*

**{¶13}** Appellants also claim that the trial court erred by granting summary judgment in favor of Scott and Mary for negligent entrustment.[8]

> To prove a claim for negligent entrustment of a motor vehicle, the plaintiff must show that (1) the driver operated the vehicle with the owner's permission, (2) the driver was incompetent to operate the vehicle, (3) the owner knew—either through actual knowledge or knowledge implied from facts known at the time of entrustment—that the driver was unqualified or incompetent to operate the vehicle, and (4) the owner's negligent entrustment caused the plaintiff's injury.

*Sandelin v. Sosbe*, 6th Dist. Lucase No. L-22-1193, 2023 -Ohio- 2091, ¶ 15. A failure to prove any of these elements defeats the claim. *Id.* The doctrine of negligent entrustment expects two distinct acts: 1) the act of knowingly allowing the use of the motor vehicle to an incompetent operator and 2) the improper use of the vehicle creating liability. *Gulla v. Straus*, 154 Ohio St. 193, 199, 93 N.E.2d 662 (1950) (liability comes from both knowingly entrusting the vehicle to an incompetent driver and the driver's negligence from the lack of due care in its

---

[8] Although the trial court in its opinion and Appellees in their brief raise the issue of negligent supervision, this claim was not raised by the complaint and will not be addressed on appeal.

operation). In other words, the claim of negligent entrustment stems from the liability of the driver to whom the vehicle was entrusted.

{¶14} Here, Appellants claim that the evidence could show that Scott gave Emily permission to drive the snowmobile despite her lack of experience. This Court notes that no evidence was presented to show that Mary had any involvement with the snowmobiles on the date in question or that she consented to Emily driving the snowmobile. Additionally, there was no evidence presented to show that Mary or Scott should have known that Emily would drive the snowmobile without their consent as she had not done so previously. Thus, summary judgment in favor of Mary is appropriate.

{¶15} Viewing the evidence in a light most favorable to Appellants, Avree testified that Scott did give Emily permission to drive the snowmobile and pull the girls on the tube. This establishes the first act required. However, as discussed above, there can be no finding of negligent entrustment in this case because Avree assumed the risk in partaking of the recreational activity. Avree testified that before she first rode when Scott drove, she was nervous. Avree decided to ride when the others were having fun. Avree, who was 12 years old at the time, knew that Emily was only 10 years old, yet Avree still chose to ride with Emily driving because she wanted to have fun. Thus, Avree assumed the risk of participating in the recreational activity of riding on the tube with Emily driving. Under the primary assumption of the risk doctrine, Appellants would need to show that Emily behaved recklessly for

liability to exist. Since no evidence of reckless activity was shown, the second act required by the doctrine of negligent entrustment is not met.

*Loss of Filial Consortium*

{¶16} Appellants also claim that the trial court erred by granting summary judgment as to the loss of filial consortium claim. The Supreme Court of Ohio has held that "a parent may recover damages, in a derivative action against a third-party tortfeasor who intentionally or negligently causes physical injury to the parent's minor child, for loss of filial consortium." *Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St.3d 244, 251, 1993-Ohio-205, 617 N.E.2d 1052. "Generally, a derivative claim is dependent on the existence of the primary claim." *McCarthy v. Lee*, 10th Dist. Franklin No. 21AP-426, 2022-Ohio-1413, ¶ 6. "[A] claim for loss of consortium is derivate in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the [party] who suffers bodily injury." *Bowen v. Kil-Kare, Inc,* 63 Ohio St.3d 84, 93, 585 N.E.2d 384 (1992). "When a principal claim fails for substantive reasons, the derivative loss-of-consortium claim fails as well." *McCarthy v. Lee*, 173 Ohio St.3d 366, 2023-Ohio-4696, ¶ 17, 230 N.E.3d 1131. If a defendant is found not to be liable for the child's injuries, the parents may not recover damages, including a loss of filial consortium claim. *Fehrenbach v. O'Malley*, 113 Ohio St.3d 18, 2007-Ohio-971, ¶ 21, 862 N.E.2d 489. Here, there was no liability for the principal claims. Since the principal claims failed

for substantive reasons, the derivative claim must also fail.  The assignment of error is overruled.

{¶17} Having found no prejudicial error in the particulars assigned and argued, the judgment of the Court of Common Pleas of Seneca County is affirmed.

***Judgment Affirmed***

**WALDICK and MILLER, J.J., concur.**

**/hls**